Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/04/2024 09:08 AM CDT

State of Nebraska, appellee, v.
Riley Lenhart, appellant.

___ N.W.3d ___

Filed October 4, 2024.    No. S-24-001.

1. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.

2. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

3. **Motions for Mistrial: Proof: Appeal and Error.** To prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

4. **Motions for Mistrial: Motions to Strike: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

5. **Jury Instructions: Presumptions.** It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.

6. **Courts: Motions for Mistrial: Motions for New Trial: Appeal and Error.** A trial court is vested with considerable discretion in passing on motions for mistrial and for a new trial, and an appellate court will not disturb a trial court's decision whether to grant a motion for mistrial or a motion for new trial unless the court has abused its discretion.

7. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

8. **Judges: Witnesses: Appeal and Error.** An appellate court's deference
   to the trial court stems in part from the recognition that the trial judge
   is better situated than a reviewing court to pass on questions of wit-
   ness credibility and the surrounding circumstances and atmosphere of
   the trial.
9. **Criminal Law: Appeal and Error.** Harmless error jurisprudence recog-
   nizes that not all trial errors entitle a criminal defendant to the reversal
   of an adverse trial result.
10. **Criminal Law: Trial: Evidence: Appeal and Error.** An error in admit-
    ting or excluding evidence in a criminal trial, whether of constitutional
    magnitude or otherwise, is prejudicial unless the error was harmless
    beyond a reasonable doubt.
11. **Verdicts: Appeal and Error.** The inquiry is not whether in a trial that
    occurred without the error, a guilty verdict would surely have been
    rendered, but whether the actual guilty verdict rendered was surely unat-
    tributable to the error.

Appeal from the District Court for Dawes County, Travis P.
O'Gorman, Judge. Affirmed.

Robert W. Kortus, of Nebraska Commission on Public
Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R.
Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

In this direct appeal from his conviction for intentional
child abuse resulting in death, Riley Lenhart challenges the
district court's handling of an unsolicited statement by a
trial witness. Lenhart objected to the witness' testimony and
moved for a mistrial. The district court struck the testimony,
overruled Lenhart's motion, and ordered the State to make a
stipulation explaining the unsolicited statement. On appeal,
Lenhart argues that the district court erred in overruling the
motion for a mistrial and ordering the stipulation. Because the

district court adequately remedied any prejudicial effect the statement may have had and because any error arising from the stipulation was harmless, we affirm.

## BACKGROUND

### Factual Background

On June 19, 2022, Lenhart's 10-month-old daughter, M.L., died while in his care. Based on bruising and other injuries to the front and sides of M.L.'s neck, a forensic pathologist found that her death was caused by ligature strangulation.

On the day of M.L.'s death, M.L.'s mother was at work and had left M.L. and her brother in Lenhart's care. According to testimony presented at trial, Lenhart told police that he fed both children before putting M.L.'s brother back to bed and leaving M.L. on the floor while he took a brief shower. Upon his return, Lenhart discovered that M.L. was not breathing. Lenhart contacted M.L.'s mother, who called the 911 emergency dispatch service. Resuscitation attempts by emergency personnel were unsuccessful, and M.L. was pronounced dead at the hospital.

Lenhart was subsequently arrested and charged with intentional child abuse resulting in M.L.'s death.

### Motion in Limine

Prior to trial, Lenhart made a motion in limine to exclude various types of character evidence, including evidence that Lenhart was subject to the requirements of the Sex Offender Registration Act and that a sexual assault examination was completed on M.L. during the autopsy. The State did not oppose this motion, and it was granted by the district court.

### Evidence and Statements at Trial

A 4-day jury trial was held, during which 19 witnesses testified and 51 exhibits were admitted into evidence. The parties' arguments on appeal, however, center solely on the events concerning the testimony of the forensic pathologist, discussed below. Additional evidence from trial will be discussed

later in this opinion only insofar as it relates to the parties' arguments on appeal.

During trial, the forensic pathologist who conducted M.L.'s autopsy was called to testify for the State. On direct examination, the State asked, "Did you notice diaper rash on [M.L.]?" The forensic pathologist responded, "It just seemed to be . . . a pretty bad case of diaper rash. I think there was a request for a sexual assault work-up."

Lenhart immediately objected to the statement as a violation of the court's previous order precluding such evidence and requested the statement be stricken. The court agreed, striking the statement and instructing the jury to disregard the stricken material. Directly thereafter, Lenhart requested a conference outside the presence of the jury. Once in chambers, Lenhart moved for a mistrial on the grounds that the statement had "poison[ed]" the jury. The State explained that the statement was unexpected and offered to stipulate that the sexual assault examination was "negative and that sexual assault exams are done on every child. . . . [T]hat's just part of the protocol and it's no more than protocol. And there's no positive findings." Before considering the stipulation, Lenhart insisted that the district court rule on his motion for a mistrial. The district court then overruled Lenhart's motion and indicated that it would like a stipulation to be read to the jurors. To preserve his objection and motion for mistrial, Lenhart declined to agree to a stipulation. The district court, nonetheless, ordered the State "to advise the jurors that the State stipulates that a sexual assault examination is a normal part of a child autopsy and there was no evidence found of a sexual assault."

Once the parties returned to open court, the district court informed the jurors that the State "[was] going to make a stipulation." The State then announced that "a request for a sexual assault exam on a child is typical, not unusual, and done. And there [were] no findings or any positive results concerning sexual assault — any sort of evidence of that. It's

just done." Notably, this language varied slightly from what the State had initially proposed and what the judge had initially detailed. In chambers, the parties had discussed, among other things, the phrase "a sexual assault examination is a normal part of a child autopsy," whereas the State ultimately informed the jury that such a procedure was "typical, not unusual, and done." Lenhart did not object to these differences in phraseology.

On the last day of trial, outside of the presence of the jury, Lenhart brought to the court's attention the fact that the day before, a local radio station had broadcast and subsequently published a news article about the trial. In the online comments attached to the article, a comment was made about hating "child molesters." Despite the article making no reference to sexual assault, Lenhart theorized that the presence of the comment likely indicated that, at one point, the article had included information stating that Lenhart was a registered sex offender. Lenhart requested, and the district court granted, permission to poll the jury to see if any jurors had seen the article. Because all jurors answered in the negative when asked whether they had heard or seen anything about the trial while the court was in recess, no further action was taken.

At the close of trial, jury instructions were given. Among those instructions was jury instruction No. 8, which stated that "evidence . . . consists of . . . [t]he facts that have been stipulated- -that is, formally agreed to by the parties." There was no objection to the use of this instruction.

## Conviction and Sentence

Lenhart was subsequently convicted of the sole count of the information and was subsequently sentenced to imprisonment for not less than 60 years and not more than life.

Lenhart timely appealed, and we moved the matter to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

Lenhart assigns, restated, that the district court erred and abused its discretion (1) in denying his motion for a mistrial and (2) in subsequently ordering the State to present a statement of fact as a one-party stipulation over his objection.

## STANDARD OF REVIEW

[1] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.[2]

## ANALYSIS

### No Error in Overruling Motion for Mistrial

In his first assigned error, Lenhart argues that the district court erred in failing to grant a mistrial, because the prejudice that arose from the forensic pathologist's statement was so significant that it could not be remedied in any other manner. Lenhart asserts that the mention of a sexual assault examination was precisely the type of evidence the motion in limine "was entered to protect against"[3] and the mere fact that the jurors heard such a statement might have caused them to improperly infer that some defect in Lenhart's character prompted the request for the examination. Lenhart also seems to argue that this prejudice was compounded by the publication of the news article, because it could have led jurors to discover that Lenhart is a registered sex offender, knowledge rendered impermissible by the court's granting of the motion in limine. At oral argument, Lenhart also contended that a communication of a sexual nature between Lenhart and M.L.'s mother, which was admitted into evidence at trial, would have further placed the jury in a frame of mind to improperly consider Lenhart's sexual proclivities.

---

[2] *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023), ___ U.S. ___, 144 S. Ct. 241, 217 L. Ed. 2d 109.

[3] Brief for appellant at 19.

The State counters that the district court's decision to strike the forensic pathologist's statement and instruct the jury accordingly provided ample remedy. The State further argues that the statement was made in response to a question about diaper rash, which, if anything, would lead jurors to assume the request for the sexual assault examination was in response to the rash and not in response to any alleged aspect of Lenhart's character.

Ultimately, we agree with the State. Before addressing our reasons for doing so, however, we briefly review the well-established framework regarding the circumstances in which a mistrial is properly granted and the standard used by an appellate court to review a trial judge's ruling on a motion for a mistrial.

[2,3] Our case law makes clear that a mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[4] In order to prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[5] In the context of a denial of a motion for mistrial, actual prejudice means prejudice that is "'[e]xisting in fact; real.'"[6] In defining the term, we have drawn on its meaning in similar legal contexts to determine that actual prejudice requires "a reasonable probability that, but for [the] errors, the result of the proceeding[s] would have been different."[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[8]

---

[4] *Vaughn, supra* note 2.

[5] *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

[6] *State v. Robinson*, 271 Neb. 698, 709, 715 N.W.2d 531, 546 (2006) (quoting Black's Law Dictionary 38 (8th ed. 2004)).

[7] *Id*. at 710, 715 N.W.2d at 546.

[8] *Id*.

[4,5] Specific to the type of prejudice at issue here, we have held that, without more, the simple fact that a jury heard an improper statement is not enough to produce the requisite prejudice.[9] Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.[10] When jurors have been so admonished, it is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.[11]

[6-8] A trial court is vested with considerable discretion in passing on motions for mistrial and for a new trial, and an appellate court will not disturb a trial court's decision whether to grant a motion for mistrial or a motion for new trial unless the court has abused its discretion.[12] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[13] An appellate court's deference to the trial court stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial.[14] The trial judge has a special perspective on the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record.[15]

---

[9] See *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023).

[10] *Id.*

[11] *Id.*

[12] *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

[13] *Vaughn, supra* note 2.

[14] *Garcia, supra* note 12.

[15] *Id.*

In this case, the parties agree that the forensic pathologist's statement was improper in light of the court's ruling on the motion in limine. It is also agreed by the parties that the statement was not solicited by the State and that there are no accusations of prosecutorial misconduct. After the improper statement was made, the district court responded promptly to Lenhart's objection, striking the statement and instructing the jury to disregard the stricken material. Accordingly, as discussed above, it is presumed that the jury obeyed the court's instruction to disregard the statement, thereby eliminating any risk of prejudice. It then becomes Lenhart's burden to direct us to something in the record that would indicate otherwise.[16]

Lenhart has not met this burden. To this end, Lenhart argued that even the merest mention of any evidentiary matter excluded by the district court's granting of his motion in limine was inherently prejudicial, such that only a mistrial could provide a viable remedy. More specifically, though, the only circumstances that Lenhart mentions to rebut the presumption that the jury obeyed the court's instruction involve the combined effect of the improper statement, the sexually explicit message between Lenhart and M.L.'s mother, and the possibility that the jurors discovered the news article. Lenhart suggests that the jurors could have relied on these three circumstances to draw impermissible conclusions about his character.

These assertions, however, are not persuasive; they amount to little more than speculation. The mere fact that (1) the forensic pathologist made the statement, (2) the news article was published, and (3) the sexually explicit message was admitted into evidence does not indicate that the jury was influenced by these circumstances, either individually or in combination. Further, Lenhart overlooks critical information about each of these circumstances. In the first instance, the statement was stricken and the jurors were instructed to disregard it. Second, all jurors denied having seen the news article. And

---

[16] See, e.g., *Trail, supra* note 5.

third, regarding the sexually explicit message, Lenhart never objected to its admissibility at trial, and, accordingly, the jury was free to determine the weight afforded it. Again, the simple fact that these circumstances occurred is not sufficient to meet Lenhart's burden.

Accordingly, we find that the district court did not err in overruling Lenhart's motion for a mistrial.

## Any Error Regarding Purported Stipulation Resulted Only in Harmless Error

In his second assignment of error, Lenhart takes issue with the district court's attempt to further remedy the situation by ordering the State to make a "stipulation" before the jury. Lenhart argues that the statement made by the State cannot be a stipulation, because he explicitly objected to its use. In other words, Lenhart asserts that a stipulation cannot be made by a single party. In addition, Lenhart notes that because the statement was labeled a stipulation, it was accorded the weightier status of fact, per jury instruction No. 8, rather than being treated as a nonevidentiary statement by an attorney. The State counters that we should not reach the issue, because Lenhart objected only to the stipulation in general and not to its form and substance in particular, and thus, his objection was not properly preserved for appeal. In the alternative, the State argues that even if the stipulation was improper, it is of no consequence because no prejudice arose from its use.

A legal commentator defines a stipulation as "an agreement between parties to a proceeding, or their attorneys, relating to some business before the court."[17] The commentator further states that "[u]nsupported assertions of attorneys during court proceedings do not establish the facts asserted unless the other appropriate parties stipulate to such facts."[18] Corpus Juris Secundum on stipulations similarly states that "a trial

---

[17] Daniel A. Morris, Nebraska Trials § 10:11 at 289 (2023).

[18] *Id.*, § 10:14 at 291 (2023).

judge does not accept or deny one party's offer to stipulate; rather, a stipulation must be reached between the parties, not one party and the trial judge."[19] Additionally, we have stated that stipulations are not binding on the rights of a person who is not a party to a proceeding and who does not assent to the stipulations.[20]

There may be merit to Lenhart's contention that the court erred in ordering the State, without Lenhart's consent, to "stipulate" as to the reason for the sexual assault examination and its results. However, we need not decide whether the State's statement to the jury was or was not a stipulation or whether the statement was properly treated as fact under jury instruction No. 8. Even assuming the statement was not a proper stipulation, any error from its use was harmless.

[9-11] Our harmless error jurisprudence recognizes that not all trial errors entitle a criminal defendant to the reversal of an adverse trial result.[21] An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless the error was harmless beyond a reasonable doubt.[22] The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.[23]

Here, it can be said that Lenhart's actual guilty verdict was surely unattributable to the State's purported stipulation. The purported stipulation could not have undermined the abundance of other evidence supporting Lenhart's conviction of intentional child abuse resulting in death. The State presented a variety of evidence on this point, including: evidence that M.L.'s cause of death was ligature strangulation; evidence

---

[19] 83 C.J.S. *Stipulations* § 1 at 5 (2022).

[20] *Lancaster County v. Slezak, ante* p. 157, 9 N.W.3d 414 (2024).

[21] *State v. Barnes, ante* p. 517, 10 N.W.3d. 716 (2024).

[22] *Id.*

[23] *Id.*

in the form of photographs and testimony sufficient to prove that the injuries to M.L.'s neck were due to ligature strangulation; evidence that M.L.'s mother had not seen any neck injuries on M.L. prior to her departure for work the morning of M.L.'s death; evidence that M.L.'s daycare provider had not noticed such injuries in the days leading up to M.L.'s death; evidence that Lenhart was the sole caregiver for M.L. at the time of her death; evidence that on the day in question, Lenhart had called M.L. a "bitch" in his communications with M.L.'s mother; and evidence that, even though he had the opportunity, Lenhart did not call 911 himself.

Lenhart does not necessarily dispute this evidence. Instead, he argues that he was irremediably prejudiced by the stipulation for several reasons. First, Lenhart argues that because the version of the stipulation presented to the jury stated that sexual assault examinations are "typical, not unusual, and done," it conflicted with the actual testimony by the forensic pathologist that the examination was "request[ed]."[24] Lenhart suggests that the use of the word "request[ed]" somehow improperly communicated to the jury that he was the sort of person whose character would merit a request for a sexual assault examination. This line of reasoning is without merit. When the district court struck the testimony, it effectually removed the testimony from evidence altogether, meaning it could not conflict with the later statement made by the State.

Further, Lenhart argues that serious harm was also caused by the change in language between the stipulation discussed in chambers and the stipulation actually given to the jury. Specifically, Lenhart points to the fact that in chambers, the judge described a stipulation that included the phrase "a sexual assault examination is a normal part of a child autopsy." In contrast, the State informed the jury that a sexual assault examination was "typical, not unusual, and done." In summary, Lenhart attributes great significance to this difference

---

[24] Brief for appellant at 20.

in wording. We disagree. The slight change in the overall verbiage from "normal" to "typical, not unusual, and done" was certainly de minimis. Moreover, regardless of this difference in phrasing, Lenhart could not have been harmed by the purported stipulation, even if it was improper, because it was in his favor to have such a statement made before the jury. The statement made clear to the jurors that a sexual assault examination was normal for these types of cases and that no evidence of sexual assault was found.

Accordingly, we find that any error in the use of the purported stipulation only resulted in harmless error; therefore, this assignment of error is without merit.

## CONCLUSION

The district court did not err in overruling Lenhart's motion for a mistrial, and any error in its handling of the purported stipulation was harmless. Accordingly, we affirm the order of the district court.

AFFIRMED.