IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HILL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER A. HILL, APPELLANT.

Filed December 3, 2024.    No. A-23-1048.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Joseph Kuehl, of Lefler, Kuehl, & Burns Law Office, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Christopher A. Hill appeals his conviction in the district court of Washington County for intentional child abuse with no serious bodily injury. On appeal, he makes a claim of prosecutorial misconduct, challenges the sufficiency of the evidence to support his conviction, and assigns error to the court's denial of his motion for new trial. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On March 25, 2022, the State filed an information in the district court, charging Hill with: Count I, first degree sexual assault, in violation of Neb. Rev. Stat. § 28-319 (Reissue 2016), a Class II felony; Count II, intentional child abuse with no serious bodily injury, in violation of Neb. Rev. Stat. § 28-707(1)(a) and (d) (Reissue 2016), a Class IIIA felony; and Count III, contributing to the delinquency of a minor, in violation of Neb. Rev. Stat § 28-709 (Reissue 2016), a Class I

misdemeanor. The charges arose from an incident in July 2021, during which Hill had sex with his girlfriend's daughter, I.H. At the time of the incident, I.H. was 17 years old and Hill was 44.

A jury trial was held before the district court from July 10-14, 2023. We have summarized the facts relevant to Hill's appeal below.

As noted above, the victim in this case is I.H. Her mother began dating Hill in June 2017. Although I.H. did not like Hill, "[t]here were times where [she], at first, kind of approved of him . . . for [her] mom." There was evidence about incidents that occurred on two weekends in July 2021 when I.H. and her mother went camping with Hill at a marina in Blair, Nebraska.

The first incident occurred the weekend of July 4, 2021. At some point on July 4, I.H. became intoxicated. According to Hill, I.H. was "very inebriated," and when he tried to help her get up to go into the camper, she "started kissing all over [him], pulling her pants down outside, [and] . . . touching [him] all over the place." According to I.H., she had no memory of ever kissing Hill on July 4, but she did remember waking up the next morning with her pants on inside out.

The second incident occurred during the weekend of July 17, 2021. On the afternoon of July 17, I.H. and her boyfriend went to the marina to spend time with I.H.'s mother and Hill. At some point, I.H. took her boyfriend home, returning to the marina around 11:15 p.m. with her sister. The girls and their mother went for a golf cart ride. The mother, who was intoxicated, allowed the girls to "grab a drink," and they both "grab[bed] Bud Light Seltzers."

Upon returning to the campsite around midnight, the mother went to bed while the girls sat by the firepit with Hill. The girls continued to drink Bud Light Seltzers; Hill also gave them some beer, which they drank. At some point, the sister went inside to take a shower, and while Hill and I.H. were alone, Hill repeatedly asked I.H. if she remembered what happened on July 4. After I.H. confirmed that she did not, Hill told her that she was "all over him" and was "trying to kiss him." According to I.H., during this exchange, she "felt very intoxicated," "uncomfortable," and "kind of in shock and frozen." She also indicated that she was "just shaking [her] head at that point."

The sister returned to the firepit before going to bed. At some point after that, Hill told I.H. that he wanted to show her something in his truck. When Hill and I.H. reached his truck, he directed her to sit in the rear passenger's seat. Hill then "laid [I.H.] down on [her] back and started taking off her pants." According to I.H., she did not say "no" or "stop" because she felt "paralyzed" and "like [she] couldn't speak or move." Hill performed oral sex on I.H. and then had intercourse with her. I.H. did not recall getting dressed or getting out of the truck; she testified that "[her] memory kind of skips to sitting back by the fire again."

I.H. recalled a conversation with Hill when they were back at the firepit. Hill told I.H., "[W]ow, you're not a virgin anymore." He also told her not to worry about pregnancy or a sexually transmitted disease because he "had a vasectomy" and "was tested for STD's." Hill then "spilled out a portion of his beer" and said that she would have "that much drainage."

At some point, Hill and I.H. returned to the camper to their respective sleeping areas. I.H. then exchanged several text messages with a friend. The text messages contain abbreviations commonly used on the particular messaging application, but they also contain many typographical errors and incoherencies. I.H. stated that she was "drunk af" and "so drunk," did not know what had just happened, and believed that her mother's "toxic" boyfriend had either raped or taken advantage of her. After the messaging exchange, I.H. slept for about an hour and then drove home because she had to work later that morning.

Later that day, I.H. went to her father's residence, where she told her father what had happened. According to her father, I.H. was "completely in tears, distraught, just bawling." I.H.'s father then called I.H.'s mother to tell the mother what I.H. had just reported. The mother was at Hill's residence at the time, and Hill, who was nearby, overheard the phone conversation. The mother confronted Hill, and he admitted to having sex with I.H.

That evening, I.H.'s parents took her to the police station, where she gave a statement. From there, they went to the hospital, where I.H. underwent a sexual assault examination. Subsequent DNA testing "included" Hill in "the male DNA" found on a vaginal swab collected from I.H. A supervisor with the Nebraska State Patrol Crime Laboratory testified that this meant "his types from his known sample were consistent with the types from the evidence sample, which in this case would be the vaginal swab."

I.H. and her parents testified about changes to I.H.'s behavior and personality following the assault. The record reflects that I.H.'s personality changed "[g]reatly." She became "very isolated," "doesn't like going out in public," lost weight, was diagnosed with anxiety and depression, and had night terrors. I.H.'s grades dropped during her senior year of high school. She is "not going to college," even though she had had "a full-ride scholarship," because "she can't focus on schoolwork."

After the State rested, Hill testified in his own defense. According to Hill, I.H. had made "advances" to him "[d]ozens of times" and was "all over [him]" on July 4. When asked if he had any conversations with I.H. about her behavior being inappropriate, Hill responded that he told I.H. to stop her behavior on more than one occasion. He testified that he never told I.H.'s parents about I.H.'s behavior because "everybody in the family feared [the mother]." Hill denied being "attracted to" or "want[ing] to have sex with [I.H.]," but he testified that he and I.H. "decided together" to have sex in the early morning hours of July 18. Hill denied providing alcohol to I.H. and insisted that she was not drunk when they had sex.

During the State's cross-examination of Hill, the prosecutor stated, "My opinion as to your credibility does not matter, that's for the jury, but I want to be open with you. I don't believe a word you say." At that point, Hill's attorney objected, and the district court held a conference in chambers. In response to the court's inquiry as to how he wanted to proceed, Hill's attorney responded:

> Judge, the reason why it took us a few minutes to come in here and we made you guys wait was I explained to my client that I think that that's grounds for a mistrial. After having had a chance to visit with Mr. Hill, he would . . . like all of us, want to have closure in this case, and he would like to proceed ahead with the trial and doesn't want to have to come back sometime in the future. As I'm talking out loud, though, thinking out loud . . . even though my client wants to get this over with, I also have to think about the impact of that statement upon the jury, and I'm not sure if an admonishment by the Judge would sufficiently cure what I think . . . and . . . I like [the prosecutor]. My goodness, I think the whole world knows that. So, I'm not mad or anything. It's just I want to do the best job I can for my client.

After conferring again with Hill, Hill's attorney chose not to move for a mistrial, requesting instead that the district court give a curative instruction and suggesting language to be included in that instruction.

After the parties returned to the courtroom, the district court instructed the jury as follows:

Ladies and gentlemen, prosecutors may not give a personal opinion on the veracity of a witness. It was improper for [the prosecutor] to give his personal opinion. As you have been previously instructed by me, and I'm emphasizing this to you again, you are the sole judges of the credibility of all witnesses. Okay?

At a later point, when the prosecutor was questioning Hill about a perceived inconsistency in his approach to I.H.'s alleged behavior, the prosecutor stated, "Mr. Hill, you strike me as a conundrum." Hill's attorney objected on the basis of "personal opinion." The district court sustained Hill's objection and again instructed the jury to disregard the prosecutor's remark.

After the completion of Hill's testimony, he offered the testimony of six character witnesses, who all generally testified that Hill was honest and trustworthy.

After the defense rested, the parties presented closing arguments. During the State's rebuttal, the prosecutor responded to comments made by Hill's attorney about the actions of I.H.'s mother and her parenting, stating, "I doubt for a moment [I.H.'s mother] thought that she had invited a predator into her home." Shortly thereafter, Hill's attorney requested a sidebar conference. The discussion during the sidebar conference is not in the record, but during a discussion that occurred on the record, after the jury had retired for deliberation, Hill's attorney noted that during the sidebar, he had advised the district court that the prosecutor's use of the word "predator" likely violated a pretrial ruling. At that point, Hill's attorney also advised the court that he had conferred with Hill and that Hill did not want his attorney to ask for a mistrial.

The jury found Hill guilty of intentional child abuse with no serious bodily injury, but not guilty on the other two counts of the information. The district court accepted the jury's verdict and found Hill guilty of intentional child abuse with no bodily injury.

Hill filed a motion for new trial pursuant to Neb. Rev. Stat. § 29-2101 (1), (2), (4), and (7) (Reissue 2016). In his supporting affidavit and brief, Hill more specifically alleged that the prosecutor committed misconduct by improperly commenting on his credibility and veracity during cross-examination and by calling him a predator during closing argument. He also alleged that the evidence was insufficient to support his conviction for child abuse since he was acquitted on the other two counts of the information.

On November 28, 2023, the district court entered an order denying Hill's motion for new trial. The court agreed that the prosecutor committed misconduct; however, the court found that Hill's right to a fair trial was not prejudiced because the prosecutor's improper comments "were not extensive" and the court provided a curative instruction when objections were made by defense counsel. The court noted that Hill, through his counsel, declined to make a motion for mistrial and opted to take his chances with the jury. The court also noted that Hill called numerous credibility witnesses to testify to his truthfulness and "vehemently denied" having nonconsensual sex with the victim. Based upon the verdicts reached, the court found it clear that the jury could "independently evaluate the credibility of all witnesses including [Hill] and was not swayed or

- 4 -

mislead by the prosecutor's statements that he did not believe [Hill]." Finally, the court found that the evidence was sufficient to support Hill's conviction for child abuse.

The district court subsequently entered an order sentencing Hill to 5 years' probation, including a jail term of 90 days.

## ASSIGNMENTS OF ERROR

Hill asserts, under a plain error review, that the State committed prosecutorial misconduct by making improper remarks and prejudicing his right to a fair trial. He also asserts that the evidence was insufficient to sustain his conviction for intentional child abuse and that the district court erred in overruling his motion for new trial.

## STANDARD OF REVIEW

Consideration of plain error occurs at the discretion of an appellate court. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024). Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023), *cert. denied* ___ U.S. ___,144 S. Ct. 1073, 218 L. Ed. 2d 249 (2024).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Lenhart*, 317 Neb. 787, 11 N.W.3d 661 (2024).

## ANALYSIS

### *Prosecutorial Misconduct.*

Hill asserts, under a plain error review, that the State committed prosecutorial misconduct by making improper remarks and prejudicing his right to a fair trial.

Hill relies upon the case of *State v. Gleaton*, 316 Neb. 114, 3 N.W.3d 334 (2024), in support of his claim that the prosecutor's improper remarks should have entitled him to a new trial. In that case, the Nebraska Supreme Court addressed the failure of defense counsel to move for a mistrial in response to the prosecutor's alleged misconduct during closing argument. The court clarified that the failure to timely assert an objection based upon prosecutorial misconduct is actually a

forfeiture as opposed to a "true waiver." The court noted that in other cases, it had conducted a plain error review in such circumstances. The court in *Gleaton* also declined to reconsider its precedent requiring a motion for mistrial to preserve the issue of prosecutorial misconduct for full appellate review, as opposed to plain error. The court concluded that even if the issue was preserved for full appellate review, the district court did not abuse its discretion in overruling the defendant's objections to the prosecutor's comments.

Here, Hill's reliance on *Gleaton* is misplaced. Unlike the defendant in *Gleaton*, Hill did not merely forfeit his right to challenge the prosecutor's remarks; he actually waived it. Waiver is different from forfeiture. See *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024). Whereas forfeiture is the failure to make a timely assertion of a right, waiver is the intentional relinquishment of a known right. *Id*. And when a party truly and effectively waives a right, there can be no error in failing to honor that right and no appellate review is available. *Id*. That basic principle applies here. Following discussion between Hill and his counsel, Hill affirmatively declined to move for a mistrial based on the prosecutor's remarks during the course of the trial. He cannot now pursue a remedy that he chose to forego.

Hill's objections to the prosecutor's remarks made during examination of Hill were sustained by the district court and the jury was instructed to disregard the remarks. Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023). It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded. *Id*. Here, there is no evidence that the jury disregarded the district court's instructions, particularly given their acquittal of the charges of sexual assault and contributing to the delinquency of a minor.

Moreover, Hill both requested and received an alternative remedy, namely a curative instruction. "It is a fundamental axiom of trial practice that one cannot be heard to complain of an alleged error corrected in a manner to which the complaining party agreed." *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 838, 434 N.W.2d 17, 22 (1989). "In other words, one may not waive an error, gamble on a favorable verdict, and, upon receiving an unfavorable result, reassert the error." *Id*. See, also, *State v. Kruse*, 303 Neb. 799, 808, 931 N.W.2d 148, 155 (2019) ("[a]s a general rule, an appellate court will not consider an argument or theory that is raised for the first time on appeal").

Even assuming for the sake of argument that Hill had not waived his right to assert plain error in regard to the prosecutor's remarks, we decline to find plain error under the circumstances of this case. Hill's substantial rights were not affected by the prosecutor's comments, which the jury was admonished not to consider.

*Sufficiency of Evidence.*

Hill asserts that the evidence was insufficient to sustain his conviction for intentional child abuse. He bases his argument on the alleged inconsistency between the jury's verdicts, wherein it acquitted him of the additional charges of first degree sexual assault and contributing to the delinquency of a minor. Regardless of any alleged inconsistency, however, the law is well-settled that a conviction on one count cannot be overturned merely because it is inconsistent with the

jury's decision not to convict on another count. See, *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022); *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). In such a situation, an appellate court cannot speculate as to the reasons for a jury's verdicts and instead must consider only whether the evidence can sustain the conviction. See *State v. Riley*, 281 Neb. 394, 796 N.W.2d 371 (2011).

A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be placed in a situation that endangers his or her life or physical or mental health. See § 28-707(1)(a). Here, the evidence supported the jury's finding that Hill committed child abuse by knowingly or intentionally placing I.H. in a situation that endangered her physical or mental health.

Hill was old enough to be I.H.'s father and, regardless of whether he provided alcohol to I.H., the evidence showed that on July 18, 2021, I.H. had been drinking and was not completely sober as Hill claimed. Moreover, Hill knew that his conduct was wrong and would likely affect I.H.'s relationship with her mother. Nonetheless, he chose to have sex with I.H., who later suffered a number of adverse consequences, including weight loss, anxiety and depression, and night terrors. See, e.g., *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016) (finding sufficient evidence to support defendant's conviction for child abuse where child was diagnosed with various mental health disorders as result of defendant's actions). Clearly, the evidence was sufficient to support Hill's conviction. This assignment of error fails.

*Motion for New Trial.*

Hill asserts that the district court erred in overruling his motion for new trial. He argues that the court should have granted his motion based on his allegations of prosecutorial misconduct and the insufficiency of the evidence. Given our resolution of these issues above, we need not address this assignment of error further. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *State v. Lear*, 316 Neb. 14, 2 N.W.3d 632 (2024).

CONCLUSION

Hill waived his right to assert prosecutorial misconduct and we find no plain error. The evidence was sufficient to support Hill's conviction, and the district court did not err in overruling his motion for new trial. Accordingly, we affirm.

AFFIRMED.