IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CARROLL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TYRON A. CARROLL, APPELLANT.

Filed December 30, 2025.    No. A-24-776.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Allyson A. Mendoza for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Tyron A. Carroll appeals his conviction in the district court for Douglas County for possession of a firearm by a prohibited person, second offense. He argues the district court erred in overruling his motions for mistrial and finding there was sufficient evidence to convict him. He also contends that his trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm.

## II. BACKGROUND

The State filed a second amended information charging Carroll with assault in the first degree, a Class II felony; use of a deadly weapon (firearm) to commit a felony, a Class IC felony; and second offense possession of a deadly weapon by a prohibited person, a Class IB felony. The charges stemmed from a shooting that occurred on September 2, 2023. S.D. was the victim and was shot in the abdomen. A jury trial was held in July 2024.

- 1 -

Dominique Davis is the mother of S.D. and T.D., who were both minors at the time of the incident. Davis and Carroll's sister, Anastasia, had been best friends until their friendship ended in June or July 2023. Anastasia is married to Kenneth Huff.

On September 2, 2023, Anastasia called Davis multiple times indicating she wanted to fight her. Sometime later, Davis, S.D., and T.D. drove to Anastasia's and Huff's home. When they arrived at the home, Davis, S.D., and T.D. got out of the car and Davis and Anastasia started to physically fight each other. Another individual, Dawanna Harden, was also present and began fighting S.D. and T.D. Huff tried to stop the fight between Davis and Anastasia, and Carroll approached the fight between Harden, S.D., and T.D. S.D. was ultimately shot.

Davis testified that Carroll approached the fight between S.D., T.D., and Harden, pulled out a gun, and shot S.D. She testified that Carroll initially pointed the gun at T.D. and she ran toward Davis' car. Davis testified that she was standing next to Carroll when Carroll shot S.D., and she saw the gun, which she described as a black handgun.

S.D. testified that just before she was shot, Carroll came out of Anastasia's and Huff's house and came over to the fight she was involved in and pulled out a gun. He first pointed it at T.D. and she ran. S.D. testified that Carroll then pointed the gun at her and shot her. She stated the firearm was a black gun.

Similar to Davis' and S.D.'s testimony, T.D. testified that Carroll pointed a gun in her face and she ran. When she turned around, she saw Carroll shoot S.D. with a black handgun.

Omaha police officers were dispatched to the location of the shooting. Upon arrival, the officers discovered S.D. had been shot in the abdomen. She was taken to the hospital where she was treated for her injuries. At the scene, law enforcement located a shell casing near the location where S.D. had been shot and found a live round at the scene. Multiple witnesses were interviewed, which led investigators to learn Carroll had been at the scene and was named as a potential suspect.

Sgt. Michael Oliver testified that he spoke with both Anastasia and Huff at the scene and viewed three doorbell camera videos from their residence that Huff accessed on his phone. Oliver testified the first video was at 2:32 a.m. and showed Carroll and Anastasia walking into the house from the front yard. The second video showed Huff and Carroll walking out of the house at 2:36 a.m., and the third video showed Anastasia and Huff going into the house.

Regarding the second video, Oliver testified that as Carroll came out of the house, he made a deliberate motion with his right hand. Oliver explained that Carroll reached toward the front of his waistband and when his elbow made an almost 90-degree bend, his arm "lifted up." Oliver testified that in his training and experience as a law enforcement officer, this motion indicates an item is being retrieved from the waistband. Oliver believed that based on the video, Carroll was retrieving an item from his waistband, which Oliver also knew was a common location for an individual to keep a firearm on his or her person.

Det. Jared Dostal testified that Anastasia and Huff provided him with a recording of one video from their doorbell camera, which was a video that occurred just prior to the shooting. Dostal testified that the video shows Huff coming out of the house, followed by Carroll. Carroll appeared to be pulling "some type of item from the front of his person." Dostal testified that Carroll is never seen with a firearm in the video. He further testified that no gun was ever found during the investigation.

Dostal also testified that he spoke with Davis at the hospital after the shooting and she gave him a description of the shooter and provided the name of that person, which was Carroll. In addition, she showed Dostal a picture of Carroll on her phone from a Facebook page.

The jury found Carroll not guilty of assault in the first degree and use of a deadly weapon (firearm) to commit a felony. The jury found Carroll guilty of possession of a firearm by a prohibited person. The State enhanced the charge of possession of a firearm by a prohibited person to a second offense. The district court subsequently sentenced Carroll to a term of 20 to 30 years' imprisonment.

## III. ASSIGNMENTS OF ERROR

Carroll assigns, renumbered, that the district court erred in (1) overruling his motions for mistrial and (2) finding sufficient evidence to support his conviction beyond a reasonable doubt.

Carroll also assigns that his trial counsel was ineffective in the following ways: (1) trial counsel failed to review vital discovery evidence with Carroll prior to trial, preventing him from aiding in his own defense; (2) trial counsel failed to share with Carroll his trial strategy or defense theory, thereby preventing Carroll from aiding in his own defense; (3) trial counsel did not call defense witnesses who could have testified that Carroll did not possess a firearm at the time of the incident; (4) trial counsel failed to properly object to Oliver's testimony regarding his opinion of what was displayed on the doorbell camera video; and (5) the cumulative effect of all the errors shows trial counsel's overall performance was so deficient that it denied Carroll effective assistance of counsel.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion. *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *Id.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.* The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if the record is insufficient to address it. *Id.*

## V. ANALYSIS

### 1. MOTIONS FOR MISTRIAL

Carroll assigns the district court erred in overruling his motions for mistrial when a witness testified to Carroll's prior release from prison and identified him as an inmate. He contends that the damaging effect was such that it could not be removed by proper instruction to the jury and it prevented him from receiving a fair trial.

Carroll's motions for mistrial were based on testimony from Davis. She testified that she met Carroll through her prior friendship with Anastasia. She was next asked how long ago she first met Carroll, and she replied it was after "he got out of prison." Subsequently, Davis was asked to identify Carroll in the courtroom and she stated, "he's the inmate in [] blue." After both statements, Carroll's counsel objected and moved for a mistrial. Both times, the district court overruled Carroll's motion for mistrial and instructed the jury to disregard Davis' comments.

A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. See *State v. Lenhart*, 317 Neb. 787, 11 N.W.3d 661 (2024). In order to prove error predicated on the failure to grant a mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.* In the context of a denial of a motion for mistrial, actual prejudice means prejudice that is "[e]xisting in fact; real." *Id.* at 793, 11 N.W.3d 667. In defining the term, we have drawn on its meaning in similar legal contexts to determine that actual prejudice requires a reasonable probability that, but for the errors, the result of the proceedings would have been different. *State v. Lenhart, supra.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Specific to the type of prejudice at issue here, the Nebraska Supreme Court has held that, without more, the simple fact that a jury heard an improper statement is not enough to produce the requisite prejudice. See *id.* Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *Id.* When jurors have been so admonished, it is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded. *Id.*

A trial court is vested with considerable discretion in passing on motions for mistrial and for a new trial, and an appellate court will not disturb a trial court's decision whether to grant a motion for mistrial or a motion for new trial unless the court has abused its discretion. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.* An appellate court's deference to the trial court stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial. *Id.* The trial judge has a special perspective on the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record. *Id.*

In this case, after each improper statement was made, the district court instructed the jury to disregard the statement. Accordingly, as discussed above, it is presumed that the jury obeyed

the court's instruction to disregard the statement, thereby eliminating any risk of prejudice. It then became Carroll's burden to direct us to something in the record that would indicate otherwise. See *id.*

Carroll has not met his burden. He argues that "[t]he district court's instructions to the jury to disregard [Davis'] two statements were woefully insufficient to preserve Carroll's right to a fair trial." Brief for appellant at 26. Carroll does not point to anything in the record to rebut the presumption that the jury obeyed the district court's instructions. The simple fact that these circumstances occurred is not sufficient to meet Carroll's burden. See *State v. Lenhart*, 317 Neb. 787, 11 N.W.3d 661 (2024). Accordingly, the district court did not err in overruling Carroll's motions for mistrial.

## 2. SUFFICIENCY OF EVIDENCE

Carroll assigns that the evidence presented at trial was insufficient to find him guilty of possession of a firearm by a prohibited person. At trial, the parties stipulated that Carroll had previously been convicted of a felony. Therefore, the only element of the offense that he challenges is proof that he possessed a firearm. See Neb. Rev. Stat. § 28-1206(1)(a)(i) (Cum. Supp. 2022).

Carroll's insufficient evidence argument rests on the alleged inconsistency in the jury's verdicts. Carroll argues that "[b]ecause the jury, as the finder of fact, found Carroll did not shoot [S.D.], he was not in possession of the firearm at the time of the shooting." Brief for appellant at 28. In other words, he argues that finding that he was in possession of a firearm is inconsistent with the jury's decision not to convict him of first degree assault and use of a firearm to commit a felony and, therefore, his conviction for the possession of a firearm by a prohibited person cannot stand.

However, the Supreme Court has determined that due to the uncertainty of the cause of the inconsistent verdict and the fact that the prosecution cannot challenge the acquittal, a conviction cannot be overturned because it is inconsistent with the jury's decision not to convict on another count. See *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019) (citing *U.S. v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)). Further, the *Briggs* court recognized that protection against jury irrationality or error is available in the form of sufficiency of the evidence review, but this review is "independent of the jury's determination that evidence on another count was insufficient." See *State v. Briggs*, 303 Neb. at 374, 929 N.W.2d at 84, quoting *U.S. v. Powell*, 469 U.S. at 67.

Because Carroll cannot challenge his possession of a firearm by a prohibited person conviction on the ground that it is inconsistent with the jury's decision on the other charges against him, we have reviewed the evidence to determine if there was sufficient evidence to support a finding that Carroll possessed a firearm.

Dostal testified that Davis gave him a description of who she believed the shooter was and provided the name of that person, which was Carroll. In addition, she showed Dostal a picture of Carroll on her phone from a Facebook page.

Davis testified that Carroll approached the fight between S.D., T.D., and Harden, pulled out a gun, and shot S.D. Davis testified that when Carroll shot S.D., she was standing next to Carroll and saw the gun, which she described as a black handgun.

- 5 -

S.D. testified that just before she was shot, Carroll came out of the house and came over to the fight she was involved in and pulled out a gun. S.D. testified that after pointing the gun at T.D., he pointed it at her and shot her. She stated the firearm was a black gun.

T.D. also testified that Carroll pointed the gun at her and she ran. When she turned around, she saw Carroll shoot S.D. with a black handgun.

In addition to the witnesses who observed Carroll in possession of a gun, Oliver testified that the video from the doorbell camera showed that as Carroll came out of the house, he made a deliberate motion with his right hand. Oliver explained that Carroll reached toward the front of his waistband and when his elbow made an almost 90-degree bend, his arm "lifted up." Oliver testified that based on his training and experience as a law enforcement officer, Carroll was retrieving an item from his waistband, which is a common location for an individual to keep a firearm on his or her person.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Carroll possessed a firearm. Therefore, there was sufficient evidence to find him guilty of possession of a firearm by a prohibited person. Carroll's assignment of error fails.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Carroll raises multiple ineffective assistance of counsel claims. Before discussing each claim, we set forth the general principles governing ineffective assistance of counsel.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record on direct appeal is sufficient to conclusively determine a claim of ineffective assistance of counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Vazquez, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.* And finally, in determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id.*

(a) First Claim

Carroll first assigns that his "[t]rial counsel's performance was deficient because trial counsel failed to review vital discovery evidence with Carroll prior to trial preventing him from aiding in his own defense." This claim fails because it is insufficiently pled.

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before an appellate court. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.*

Further, a generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). On direct appeal, an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance. See *id.* An appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *Id.*

Carroll's assignment of error fails to allege what discovery his trial counsel may have had that was not shared with him or how it would have aided his defense. As such, his allegation of deficient performance is insufficiently pled.

### (b) Second Claim

In his second ineffective assistance of counsel claim, Carroll alleges that his "[t]rial counsel's performance was deficient because he failed to share with Carroll his trial strategy or defense theory, thereby preventing Carroll from aiding in his own defense." Carroll contends that the record may be insufficient to address this claim. We conclude, however, that the claim fails because it is insufficiently pled.

An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Sunquist, supra.* In his brief, Carroll argues:

> Trial counsel failed to share with Carroll his trial strategy or theory of defense at any point before or during trial. By keeping this information from Carroll, trial counsel prevented him from meaningfully aid[ing] in his own defense. Had Carroll been informed of trial strategy or defense theory, he would have shared vital information to trial counsel that would have definitively demonstrated the State failed to provide evidence beyond a reasonable doubt that he was in possession of a firearm at the time of the incident.

Brief for appellant at 16-17. This argument is not sufficient because it does little more than restate his assigned error. Additionally, Carroll does not identify the "vital information" that would have shown he did not possess a firearm. See *State v. Sundquist, supra* (appellant must make specific allegations of conduct he or she claims constitutes deficient performance by trial counsel when raising ineffective assistance claim on direct appeal). This claim fails.

### (c) Third Claim

In his third claim of ineffective assistance of counsel, Carroll alleges that his "[t]rial counsel's performance was deficient because trial counsel did not call defense witnesses who could have testified that Carroll did not possess a firearm at the time of the incident."

The Supreme Court requires a significant degree of specificity in claims concerning witnesses. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). To effectively raise on direct appeal a claim of ineffective assistance of trial counsel in relation to the failure to call witnesses, appellate counsel must give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787, *disapproved on other grounds, State v. Rupp*, 320 Neb. 502, ___ N.W.3d___ (2025). Vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *Id.* References to trial counsel's failure to call "character witnesses," "multiple eyewitnesses," and "alibi witnesses" have been deemed insufficiently specific to effectively raise a claim of ineffective assistance of counsel on direct appeal. *Id.* at 678, 11 N.W.3d at 438 (internal quotations omitted).

In *State v. Hall*, 33 Neb. App. 856, ___ N.W.3d ___ (2025), this court held that defendant's use of the phrase "defense witnesses" was not specific enough to effectively raise an ineffective assistance of counsel claim. Similarly, in the present case, Carroll uses the phrase "defense witnesses" in his assignment of error and he does not name or describe the individuals he believes trial counsel should have called. Carroll does name the witnesses in the argument section of his

brief, but this does not overcome his failure to name the witnesses in his assignment of error as established by case law. Accordingly, Carroll's assignment of error does not satisfy the specificity requirement to effectively raise a claim of ineffective assistance of counsel on direct appeal. This claim fails and is not preserved for postconviction review.

### (d) Fourth Claim

In his fourth claim of ineffective assistance, Carroll assigns that his "[t]rial counsel's performance was deficient because trial counsel failed to properly object to Oliver's testimony regarding his opinion of what was displayed on the surveillance video."

The "surveillance video" that Carroll refers to is the video from Huff's doorbell camera that showed Huff and Carroll coming out of Anastasia's and Huff's house. Oliver testified as to what he saw in the video. He stated, "As [Carroll] left the residence, he made a very deliberate motion with his right hand. He reached towards the front of his waistband. And when his elbow made an almost 90-degree bend, his arm lifted up." Oliver was then asked, based on his training and experience, why Carroll's movements were important to him as a law enforcement officer. Oliver testified

> it indicates to us that an item is being retrieved from the waistband . . . it was my belief, based on my training and experience, that Mr. Carroll was retrieving an item from his waistband, which I also know is commonly a location a firearm is kept on somebody's person.

Carroll argues he suffered prejudice from trial counsel's failure to object to Oliver's testimony because the jury adopted Oliver's opinion that when Carroll moved his elbow, he was retrieving a firearm and therefore was in possession of a firearm. Carroll contends that Oliver's testimony was not based on personal observations, but on "narrative speculation." Brief for appellant at 19. He states that Nebraska courts prohibit lay witnesses, including officers, from giving opinions about a defendant's guilt, state of mind, or how a crime occurred unless based on first-hand knowledge.

We find that Oliver was an expert witness, rather than a lay witness, based on his specialized knowledge and training. Neb. Rev. Stat. § 27-702 (Reissue 2016) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. The witness should not be allowed to express an opinion on an inadequate basis or in respect to facts not disclosed to the jury. *State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983). Where the opinion testimony of an expert witness does not have a sound and reasonable basis it should be stricken. *Id.*

In the present case, Oliver described Carroll's movements in the video and gave his opinion about his movements based on his training and experience. This testimony helped the jury determine a fact in issue, and his opinion was based on a sound and reasonable basis. Accordingly, the court did not err in accepting Oliver's opinion, and therefore, trial counsel was not deficient in

failing to object nor was Carroll prejudiced by Oliver's testimony. See *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787, (as matter of law counsel is not ineffective for failing to make objection that has no merit), *disapproved on other grounds, State v. Rupp*, 320 Neb. 502, ___ N.W.3d___ (2025). Accordingly, this claim of ineffective assistance of counsel fails.

## (e) Fifth Claim

In his fifth claim, Carroll argues: "Even if any of the examples of trial counsel's performance did not, by itself rise to the level of a constitutional violation, the cumulative effect of all the errors shows trial counsel's overall performance was so deficient that it denied Carroll the effective assistance of counsel." Long ago, the Supreme Court recognized the cumulative error doctrine in the context of a criminal jury trial. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). The Court explained that while one or more errors, standing alone, may not constitute reversible error, if their cumulative effect was to deprive the defendant of a fair and impartial trial, a new trial must be granted. *Id.*

Carroll's cumulative effect claim fails because, for the reasons stated above, his ineffective assistance of trial counsel claims are either without merit or insufficiently pled. Combining these meritless claims does not support a claim of cumulative error. The cumulative error doctrine does not apply here. See *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025) (because ineffective assistance claims are either without merit or not sufficiently raised or record is insufficient to resolve them on direct appeal, this record does not support claim of cumulative error).

## VI. CONCLUSION

We conclude the district court did not err in overruling Carroll's motions for mistrial or in finding there was sufficient evidence to convict him. We further conclude that his claims of ineffective assistance of counsel are either without merit or insufficiently pled. Accordingly, Carroll's conviction for second offense possession of a firearm by a prohibited person is affirmed.

AFFIRMED.